### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal Case No. 06-173(JR)** |
| | **:** | |
| **DEMETRIACE A. MOORE,** | **:** | |
| | **:** | |
| **A/K/A LINWOOD ASHTON,** | **:** | |
| **Defendant.** | **:** | |
| _____ | **:** | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S
### MOTION TO SUPPRESS PHYSICAL EVIDENCE

The United States of America, by and through its attorney, the United States Attorney for the

District of Columbia, hereby opposes defendant's motion to suppress physical evidence.  The

government relies upon the points and authorities set out in this memorandum and at any hearing on

this matter.

### Factual Background

On February 23, 2006 at approximately 4:30 p.m., Metropolitan Police Department Officers

Charles Johnson and Milliard Pitts were riding in a marked police cruiser when they observed a

light-colored Volkswagon with heavily tinted windows traveling southbound in the 600 block of 7th

Street, Northeast, Washington, D.C.  Because the officers suspected that the tint on the windows of

the Volkswagon was darker than permitted by law in the District of Columbia, the officers activated

their lights and sirens and pulled the car over in the 600 block of 7th Street, Northeast.  Before

approaching the car, Officer Pitts used the cruiser's public announcement system and asked the

driver to roll down all the windows of the car.  Officer Pitts did this so that the officers could see

inside of the vehicle.   After the windows were down, the officers were able to see that there were

two men inside – the driver, defendant Demetriace Moore a/k/a Linwood Ashton, and the passenger,

Andre Cole.  The officers then walked up to the car and upon doing so, they smelled the odor of Phencyclidine ("PCP") emanating from the car.  Officer Pitts advised defendant Moore of the reason for the stop and asked for his permit, registration and proof of insurance.  Defendant Moore produced only his Washington, D.C. issued identification card and the vehicle's registration.  Officer Pitts returned to his police cruiser, where he ran defendant Moore's personal information through the WALES/NCIC system.  At that time, the officer learned that defendant Moore had a suspended permit and therefore arrested him.  In a search incident to arrest, officers found $1237.29 and a digital scale on defendant's person.  The officers subsequently tested the tint on the windows of defendant's car and determined that the tint was darker than allowed by the District of Columbia.  The officers then issued defendant a notice of infraction for violating the tint laws.  He also received a notice of infraction for failing to exhibit proof of insurance.

While defendant Moore was being arrested, Officer Johnson noticed a black bag on the floor board of the front passenger seat.  Officer Johnson asked the passenger, Andre Cole, to step out of the car.  The officers then looked into the black bag and found several empty small ziplock bags and an Altoid can which contained three vials  of what the DEA laboratory later confirmed was PCP.  The officers then rolled up the windows of the car and closed the doors in an attempt to preserve the smell, until a canine unit arrived on the scene.

When the drug sniffing dog arrived, it alerted on the trunk.  In the trunk, officers found an eye dropper, and empty bottles and caps inside a plastic bag.  In the area of the trunk where the jack is usually stored, officers found 99.8 grams or marijuana and 14 ounces of PCP in 2 bottles.  The dog also alerted on the drive shaft in the car.  There, officers found 6 ziplocks of heroin.  On the scene, defendant Moore spontaneously stated that the bag that the officers found in the car belonged to him.

-2-

Defendant now seeks to suppress the evidence recovered in this case.   Defendant claims that the evidence and the statement were obtained in violation of his Fourth Amendment rights. Defendant claims that neither he nor his passenger had engaged in any illegal activity at the time they were stopped.   Defendant's contention is meritless.

### A.    The officers lawfully stopped defendant.

First, the officers lawfully stopped the car defendant was driving.   On February 23, 2006, Officer Pitts, who is certified to use the tint meter, observed defendant operating a Volkswagon with heavily tinted windows, causing him to question whether the tint was darker than the level of tint permissible under D.C. law and providing him with grounds to investigate whether a violation had in fact occurred.   Indeed, "[t]he Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one."   United States v. Mitchell, 951 F.2d 1291, 1295 (D.C. Cir. 1991).   See also Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977) ("there is no question about the propriety of" stopping a car for a traffic violation); Delaware v. Prouse, 440 U.S. 648, 659 (1979) ("The foremost method of enforcing traffic and vehicle safety regulations . . .  is acting upon observed violations. Vehicle stops for traffic violations occur countless times each day; and on those occasions permits and registration papers are subject to inspection. . . . "); United States v. Montgomery, 561 F.2d 875, 879 (D.C. Cir. 1977) ("The police may stop and question the driver of a vehicle when an infraction of the motor vehicle code is seen or suspected.").   Thus, the officers had clear authority to pull the defendant over to enforce traffic regulations.   Furthermore, even a mistake of fact will support a vehicle stop, see, e.g., United States v. Busillos-Munoz, 235 F. 3d 505 (10th Cir. 2000)(Officer suspected high beams were on, officer incorrect but suspicion reasonable, stop valid).

-3-

B.     **The officers lawfully arrested defendant.**

The officers had probable cause to arrest defendant once they learned he had a suspended driver's permit.  Indeed, the Fourth Amendment permits police to make warrantless arrests based upon probable cause to believe that a crime was being committed.  United States v. Wesley, 293 F.3d 541, 545 (D.C. Cir. 2002).  Probable cause to arrest is viewed from the perspective of the police officer and it is a decision that is reviewed based upon the totality of the circumstances confronting the officer at the time of the events leading up to the arrest.  Illinois v. Gates, 462 U.S. 213, 230-32 (1983).   Probable cause exists where the arresting officer possesses information "sufficient to warrant a prudent [person] in believing that the [suspect has] committed or [is] committing an offense."  Beck v. Ohio, 379 U.S. 89, 91, (1964); see also United States v. Green, 670 F.2d 1148, 1152 (D.C.Cir.1981).  Under D.C. Code §50–1403.01(e), operating a motor vehicle in the District during the period the individual's permit is suspended is a criminal offense.  Accordingly, when the officers learned that defendant, who had been driving the car, had a suspended permit, they had probable cause to believe he had committed a crime and thus arrest him.

C.     **The officers lawfully searched defendant and the passenger compartment of defendant's car incident to defendant's arrest.**

The officers properly searched both defendant's person and the passenger compartment of defendant's car after defendant was arrested.  Once the police have probable cause for an arrest, they may make a full search of the arrestee and the area within the arrestee's immediate control at the time of the arrest.  Chimel v. California, 395 U.S. 752, 763 (1969).  Where the arrestee is an occupant of a car, the police officers may search the passenger compartment of the automobile incident to the

-4-

arrest and may examine the contents of any open or closed containers in the passenger compartment. New York v. Belton, 453 U.S. 454, 460-461, n.4 (1981). In this case, the police had probable cause to arrest defendant upon learning that he had been operating a car while he had a suspended permit, and thus they were allowed under the Fourth Amendment to search both his person and the passenger compartment of defendant's car incident to his arrest. From defendant's pockets, the officers legally seized $1,237.29 and a digital scale. In the black bag on the floorboard of the passenger side of the car, officers lawfully recovered ziplock bags and an Altoid can containing three vials of PCP.

> **D.    The officers lawfully searched and seized the drugs found in the trunk of defendant's vehicle.**

Here, the officers lawfully searched the trunk of defendant's vehicle because they had probable cause to believe that there was contraband in the trunk after they found contraband in the passenger compartment of the car. As the Supreme Court stated in United States v. Ross, 456 U.S. 798, 824-25 (1982), "[w]hen probable cause justifies the search of a lawfully stopped car, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." Indeed, even the search of a trunk is permissible, if the police have "probable cause to believe that contraband might be found in the trunk." United States v. Brown, 334 F.3d 1161, 1170-1171 (D.C. Cir. 2003) (Circuit Court upheld search of trunk in part because the presence of gun supported possibility that the car contained additional weapons, ammunition and other contraband); see also United States v. Turner, 119 F.3d 18, 23 (D.C. Cir. 1997)(probable cause to believe additional contraband might be found in trunk based on the smell of burnt marijuana, and the sight of pieces of torn cigar paper, and a ziplock bag of green weed material in passenger compartment of car). In this case, the officers had probable to believe that additional contraband might be in the trunk

because (1) they found ziplocks and vials of PCP in the passenger compartment of the car and (2) the drug sniffing dog they called to the scene alerted on the trunk.[1]  Accordingly, the officers lawfully searched the trunk of defendant's car and seized the narcotics hidden there.

### E.  Defendant's statement volunteered statement is admissible.

Lastly, defendant contends that his statement that the black bag found in the car belonged to him should be suppressed because it was made involuntarily.  Defendant's contention is meritless since he was not being interrogated, within the meaning of Miranda, at the time he made the statement.  Rather, the statement was volunteered.

#### 1. Defendant spontaneously made his statement.

Miranda warnings must only be given when a suspect is in custody and subject to interrogation.  "[By] custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  Miranda v. Arizona, 384 U.S. 436, 444 (1966).  The Supreme Court has noted:

> The Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent.  That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.  The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.  This focus reflects the fact that the Miranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police.  A practice that the police should know is reasonably likely to evoke an incriminating

---

[1]    The drug sniffing dog also alerted on the gear shaft in the car, providing the officers with even more probable cause to search that area of the car.  Thus, the heroin found in the gear shift was also legally seized.

> response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.

Rhode Island v. Innis, 446 U.S. 291, 301-02 (1980) (footnotes omitted). Additionally, a spontaneous statement is admissible, whether it is made before or after arrest, regardless of the presence or lack of Miranda warnings. See United States v. Samuels, 938 F.2d 210, 214 (D.C. Cir. 1991). Although defendant was in custody at the time he made his statement, he was not being questioned by the police. The officers offered no reason or provocation to coerce the defendant into making incriminating statements. In fact, the police had no intention of eliciting an incriminating response since they were not even speaking with the defendant at the time. Therefore, the circumstances do not indicate the defendant was being interrogated. Rather, the defendant spontaneously volunteered the statement, once he realized the officers had discovered the black bag.

### 2. The statement was made voluntarily.

The statement was made voluntarily, and thus is admissible. "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." Miranda, supra, 384 U.S. at 478. It is well settled that the voluntariness of statements by a defendant is to be determined on a case-by-case basis by examining the totality of the circumstances. North Carolina v. Butler, 441 U.S. 369, 374-375 (1979); United States v. McNeil, 433 F.2d 1109, 1112 (D.C. Cir. 1969). A statement is voluntary for purpose of due process so long as the statement is "the product of an essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973); Culombe v. Connecticut, 367 U.S. 568, 602 (1961). Defendant fails to proffer any facts which would indicate that his will was overborne.

See <u>Rogers v. Richmond</u>, 365 U.S. 534, 544 (1961) (government conduct must be "such as to overbear [a suspect's] will to resist and bring about confessions not freely self-determined"). Defendant's contact with police in the instant case took place on a public street at approximately 4:30 p.m.  It was only minutes in length, and there is no indication on the facts of this case that the defendant was physically intimidated or tricked into speaking.  Moreover, for a statement to be involuntary, it must have been caused by government overreaching.  <u>Colorado v. Connelly</u>, 479 U.S. 157, 163-64 (1986) ( "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law"). Defendant has pointed to no indication of such conduct in this case.

## **CONCLUSION**

WHEREFORE, for the reasons stated above, the United States respectfully submits that

defendant's motion to suppress physical evidence should be DENIED.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney

_____

Denise M. Clark
Assistant United States Attorney
Federal Major Crimes Section, Bar No. 479149
555 4th Street, N.W.  #4840
Washington, DC 20530
(202) 353-8213; Fax: 353-9414